Arthur G. Klein, J.
This action, a companion action to Matter of Helpern v. McMorran (50 Misc 2d 134), decided simultaneously herewith, with a view to stop the construction of the Lower Manhattan Expressway, has been instituted pursuant to section 51 of the General Municipal Law, seeking judgment decreeing: (1) that the map change of September 15, 1960, is void; (2) that the inclusion of the project in the executive capital budget is void; (3) that the Mayor’s certificate of June 23, 1965, approving the acquisition of the property is void, and for appropriate injunctive relief.
*484 Plaintiffs have moved for a temporary injunction, and defendants have cross-moved for dismissal, on the grounds that the complaint fails to state a claim upon which relief may be granted, and that plaintiffs are without standing to sue.
The Expressway has been the hub of controversy for decades. It has been variously asserted that it will improve the flow of both local and interstate traffic; that ‘ engulfing ’ ’ the city with “ endless sprawls of expressways ” will not solve our traffic problem. It is claimed that people working for businesses in the area will lose their jobs; per contra, it is claimed that demolition and construction will create new jobs.
It is urged that neighborhoods will lose their identities and people their dwellings; but by the same token, that many of the neighborhoods are slum areas and the dwellings substandard.
These considerations, while appropriate to the exercise of legislative judgment as to the wisdom of proceeding with the Expressway can obviously play no part in the judicial inquiry, which is peculiarly limited to the validity of the steps challenged with respect to the grounds on which they are challenged. These grounds the court finds to be without merit.
No facts are alleged in the complaint to support the assertion that the 1960 map change is void; obviously, therefore, no relief may be granted as to that branch of the complaint. Remaining are the two allegations that: (a) the inclusion of the project in the executive capital budget is void; (b) the Mayor’s certificate of June 23, 1965, is void.
These will be treated seriatim.
The gist of the complaint with regard to the inclusion of the project in the executive capital budget is that it is entitled Project No. ES-46 and ES-47; that the ES designation is intended only for those projects which are exempt from the city debt limit for sewage disposal projects.
Plaintiffs refer to symbol ES, which appears in a note appended to the budget as printed in the City Record to be such a designation.
Analysis of the budget and budgetary symbols, however, reveals that this is not the case.
The “ ES ” referred to by plaintiffs in their complaint is a designation of source of funds. It refers to suffixes of figures in columns 7 and 8 of the budget.
Here, however, the designation ES appears as a prefix to the project number in column 1; and is merely an indication that the project initiated with the Board of Estimate (and is now processed by the Mayor’s office). This is borne out by *485 examination of other symbols which are used as prefixes to project numbers.
Thus, capital project CME 1 originated with the Chief Medical Examiner; all projects beginning with the letter E alone, with the Board of Education; F with the Fire Department; HE, Health; HN, Higher Education; HW, Highways; HO, Hospitals. The list could go on. Obviously, ES in the project number means simply that it originated with the Board of Estimate.
The source of the funds, however, as the project under consideration, is marked “ S ”, meaning, according to the legend annexed to plaintiffs’ Exhibit 1, that the State of New York is providing the funds.
There is accordingly no merit to the allegation that the designation of the project as ES 46 and ES 47 limits the expenditure to sewers.
The plaintiffs’ conclusion that the Mayor’s certificate of June 23, 1965 is void is based on the proposition that the Board of Estimate on December 11, 1962 had unanimously rejected plans for the construction of the Expressway.
The difficulty with this position is that it ignores the change in the City Charter effective January 1, 1963. Under section 228, discretion to acquire property is vested solely in the Mayor.
Section 228 of the charter was first enacted January 1, 1963. It did not exist, nor did it have a counterpart in 1962.
Final action on a project such as the Expressway would have been taken by the Board of Estimate, and not by the Mayor alone. (Matter of Porter Flushing Realty Co. v. New York City Planning Comm., 21 A D 2d 864 [1st Dept., 1964].)
Section 228 provides as far as here relevant, that as to any capital project included, as was this Expressway, in the capital budget, the Mayor, before directing acquisition of real property therefor shall cause a public hearing to be held by the Board of Estimate on not less than 10 days’ notice and the Mayor may, ‘ ‘ after such hearing direct such acquisition * * * to proceed.”
Despite the rejection of the Expressway in 1962, it remained in the capital budget, awaiting final action by the Board of Estimate. (Matter of Porter Flushing Realty Co. v. New York City Planning Comm., supra.)
The hearing pursuant to section 228 was held by the Board of Estimate on December 22, 1964. Thereafter, the Board of Estimate sent a communication to the Mayor indicating that the public hearing relative to the construction of the Expressway *486 had been held and closed. This was sufficient to enable the Mayor to approve the acquisition of the property.
Finally, it is asserted that the Mayor’s certificate is improper because certain temporary construction and demolition easements are not shown on the 1960 map as approved.
The 1960 map shows the permanent changes in the City Map. This is all that is required under the charter (§ 199).
The temporary easements necessary to construction are not changes in the map and do not require special authorization. They aré, of course, shown on an easement map because condemnation and evaluation of the property affected by the easements will proceed in the courts. The easement map has in fact been approved by the City Planning Commission as Capital CP-17294, by report dated May 3, 1962.
There is no merit in the complaint, and it is accordingly dismissed;
In view of this disposition on the merits of the complaint, the court finds it unnecessary to reach the question urged by the defendants that the plaintiffs have no standing under section 51 of the General Municipal Law.